UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

KEVIN SCHULER a/k/a KEVIN SHULER,

                         Plaintiff,

            -against-

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CORRECTIONS,
COMMISSIONER JOSEPH PONTE; CHIEF OF
DEPARTMENT WILLIAM CLEMONS; CAPTAIN
TAMEKA BARTON Shield No. 1685; CAPTAIN
HORTON Shield No. 679; CORRECTION
OFFICER CHRISTINE REID Shield No. 06215;
CORRECTION OFFICER O'NEIL POWELL Shield
No. 15537; CORRECTIONAL OFFICER SOPHIA
RICHARDS Shield No. 13909, CORRECTION
OFFICER ROBERT MUNOZ Shield No. 10864,
CAPTAIN CHARLES DAVIS SHIELD No. 1282,
CORRECTION OFFICER JAMES LARAQUE
SHIELD No. 3665, CORRECTIONS OFFICER
MOSES PETERS SHIELD No. 3693,
CORRECTION OFFICERS JOHN DOE NUMBER
4 THROUGH 10 in their individual and official
capacities as employees of the City of New York
Department of Corrections,;

                        Defendants.

------------------------------------------------------------ X

**FIRST AMENDED
COMPLAINT AND
JURY TRIAL DEMAND**


14 CV 4906 (WFK)(RER)

## PRELIMINARY STATEMENT

      1.      This is a civil rights action brought by plaintiff ("Mr.

SCHULER" or "plaintiff") for damages pursuant to 42 U.S.C. § 1983. While

in the custody of the New York City Department of Correction ("DOC" or

"the Department"), and detained at the Otis Banton Correctional Center

(OBCC), Mr. SCHULER was viciously assaulted by staff members of the Department.

2.      The Department and its supervisors are, and have been, aware that Department staff members persistently use brutal force and cause prisoners serious injuries, and they have consistently, for years, failed to take meaningful and effective steps to curb staff brutality in the jails.  The incident involving plaintiff is part of a pattern of incidents where DOC officers use excessive and injurious force to command, control, or discipline inmates.  As a result of this attack, plaintiff suffered significant injuries.   Plaintiff now seeks redress against the DOC employees who assaulted him and failed to intervene in his assault, their supervisors and the City of New York.

## JURISDICTION

3.      This action arises under the Eight and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988.  This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343 (3) and (4).  Plaintiff also asserts jurisdiction over the City of New York under 28 U.S.C. §1331 and

§1367. Plaintiff requests that this Court exercise pendent jurisdiction over those state law claims arising out of the same common nucleus of operative facts as plaintiff's federal claims.

## JURY DEMAND

4. Plaintiff demands a trial by jury in this action.

## VENUE

5. Under 28 U.S.C. § 1391(a),(b),(c), venue is proper in the Eastern District of New York.

## PARTIES

6. Plaintiff at all times relevant hereto resided in the City and State of New York.

7. That at all times hereinafter mentioned, and upon information and belief, the defendant, The City of New York, was at all times relevant hereto, a municipal corporation duly organized and existing pursuant to the laws, statutes and charters of the State of New York.

3

8.     THE NEW YORK CITY DEPARTMENT OF CORRECTION was at all times relevant hereto, an agency of the defendant The City of New York.

9.     That at all times hereinafter mentioned, and on information and belief, Defendant TAMEKA BARTON, Shield No. 1685, was at all times relevant hereto, an employee of the defendant City of New York, as a correctional officer employed by the New York City Department of Correction. Defendant BARTON is sued in his individual capacity.

10.     Defendant BARTON at all relevant times herein, either directly participated or failed to intervene in the assaults of plaintiff.

11.     That at all times hereinafter mentioned, and on information and belief, Defendant Captain HORTON, first name unknown, Shield No. 679, was at all times relevant hereto, an employee of the defendant City of New York, as a correctional officer employed by the New York City Department of Correction. Defendant HORTON is sued in his individual capacity.

12.     Defendant HORTON at all relevant times herein, either directly participated or failed to intervene in the assaults of plaintiff.

4

13.     That at all times hereinafter mentioned, and on information and belief, Defendant Captain CHRISTINE REID, Shield No. 06215, was at all times relevant hereto, an employee of the defendant City of New York, as a correctional officer employed by the New York City Department of Correction. Defendant REID is sued in her individual capacity.

14.     Defendant REID at all relevant times herein, either directly participated or failed to intervene in the assaults of plaintiff.

15.     That at all times hereinafter mentioned, and on information and belief, Defendant O'NEIL POWELL, Shield No. 15537, was at all times relevant hereto, an employee of the defendant City of New York, as a correctional officer employed by the New York City Department of Correction. Defendant POWELL is sued in his individual capacity.

16.     Defendant POWELL at all relevant times herein, either directly participated or failed to intervene in the assaults of plaintiff.

17.     That at all times hereinafter mentioned, and on information and belief, Defendant SOPHIA RICHARDS, Shield No. 13909, was at all times relevant hereto, an employee of the defendant City of New York, as a

correctional officer employed by the New York City Department of Correction. Defendant RICHARDS is sued in her individual capacity.

18.    Defendant RICHARDS at all relevant times herein, either directly participated or failed to intervene in the assaults of plaintiff.

19.    That at all times hereinafter mentioned, and on information and belief, Defendant ROBERT MUNOS, Shield No. 10864, was at all times relevant hereto, an employee of the defendant City of New York, as a correctional officer employed by the New York City Department of Correction. Defendant MUNOS is sued in his individual capacity.

20.    Defendant MUNOS at all relevant times herein, either directly participated or failed to intervene in the assaults of plaintiff.

21.    That at all times hereinafter mentioned, and on information and belief, Defendant Captain CHARLES DAVIS, Shield No. 1282, was at all times relevant hereto, an employee of the defendant City of New York, as a correctional officer employed by the New York City Department of Correction. Defendant DAVIS is sued in his individual capacity.

22.    Defendant DAVIS at all relevant times herein, either directly participated or failed to intervene in the assaults of plaintiff.

6

23.     That at all times hereinafter mentioned, and on information and belief, Defendant JAMES LARAQUE, Shield No. 3665, was at all times relevant hereto, an employee of the defendant City of New York, as a correctional officer employed by the New York City Department of Correction. Defendant LARAQUE is sued in his individual capacity.

24.     Defendant LARAQUE at all relevant times herein, either directly participated or failed to intervene in the assaults of plaintiff.

25.     That at all times hereinafter mentioned, and on information and belief, Defendant MOSES PETERS, Shield No. 3693, was at all times relevant hereto, an employee of the defendant City of New York, as a correctional officer employed by the New York City Department of Correction. Defendant PETERS is sued in his individual capacity.

26.     Defendant PETERS at all relevant times herein, either directly participated or failed to intervene in the assaults of plaintiff.

27.     At all times relevant defendants John Doe 4 through 10 were correctional officers employed by the DOC.  Plaintiff does not know the real names and shield numbers of defendants John Doe 4 through 10.

28.     At all times relevant herein, defendants John Doe 4 through 10 were acting as agents, servants and employees of defendant City of New York and the DOC.  Defendants John Doe 4 through 10 are sued in their individual and official capacities.

29.     At all times relevant herein, defendants John Doe 4 through 10 were other DOC correctional employees who either directly participated or failed to intervene in the July 4, 2014 incident.

30.     That at all times hereinafter mentioned, and on information and belief, the defendant correction officers, were at all times relevant hereto, employees of the defendant City of New York, as correctional officers employed by the defendant, THE NEW YORK CITY DEPARTMENT OF CORRECTIONS. Defendant officers are each sued in their individual and official capacity.

31.     At all times mentioned herein, defendants were acting under color of state and local law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the City of New York and the State of New York.

32.     At all times relevant hereto, Joseph Ponte was the Commissioner of DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of her employment as such, and acting under color of state law. On information and belief, defendant Ponte, as Commissioner of DOC, was responsible for the policy, practice, supervision, implementation, and conduct of all DOC matters and was responsible for the training, supervision, and conduct of all DOC personnel, including the defendants referenced herein. As Commissioner, defendant Ponte was also responsible for the care, custody, and control of all inmates housed in the Department's jails.  As Commissioner, Ponte was provided on a regular basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in the Department jails, and was consistently and regularly made aware of the number and severity of injuries sustained by inmates at the hands of staff members in "use of force incidents" in the jails. In addition, at all relevant times, defendant Ponte was responsible for enforcing the rules of the DOC, and for ensuring that DOC personnel obey the laws of the United States and of the State of New York. Defendant Ponte is sued in his individual and official capacity.

33.     At all times relevant hereto Defendant William Clemons was the Chief of Department of DOC, acting in the capacity of agent, servant, and employee of Defendant City, within the scope of his employment as such, and acting under color of state law. As Chief of Department, he was the highest-ranking uniformed member of the department, and was responsible for the supervision, oversight, and discipline of the uniformed security staff in all the Department jails. He was also responsible for the care, custody, and control of all inmates in the Department jails.  As Chief of Department, Clemons was provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in Department jails. Defendant Clemons is sued in his individual capacity.

34.     That at all times hereinafter mentioned, and upon information and belief, the individual defendants are named herein both personally and in their official representative capacities as correctional officers employed by the defendants, The City of New York and THE NEW YORK CITY DEPARTMENT OF CORRECTIONS.  And that each and all of the acts of the individual defendants alleged herein were done by the individual defendants and each of them under cover and pretense of the

statutes and laws of the State of New York, and under and by virtue of their authority as police officers and employees of defendant, The City of New York.

35.     That as a result of the foregoing, the defendant, The City of New York, is liable for the individual defendant's acts pursuant to the doctrine of "respondeat superior."

## STATEMENT OF FACTS

### A History of Excessive Use of Force New York City's Jails

36.     In August of 2014, the United States Attorney's Office issued a shocking report, exposing the DOC for deplorable conditions in New York City Jails, including of course the DOC's culture of excessive use of force by staff against inmates.  In fact, for decades, through Department reports and civil litigation, DOC has been aware of the routine, dangerous, and unconstitutional use of excessive force by staff at individual facilities in the New York City Department of Correction.[1]

_____

[1] *See, e.g., Fisher v. Koehler*, 692 F. Supp. 1519 (S.D.N.Y. 1988), *injunction entered*, 718 F. Supp. 1111 (1989), *aff'd*, 902 F.2d 2 (2d Cir. 1990) [Correction Institution for Men]; *Jackson v. Montemagno*, CV

37.     For example, *Sheppard v. Phoenix*, 210 F. Supp. 2d 250 (S.D.N.Y. 1998) (terminating injunction), was a class action that concerned the City's Central Punitive Segregation Unit (CPSU). That litigation unearthed abuse of prisoners and cover-ups sufficiently serious to merit criminal prosecution.

38.     *Ingles v. Toro*, 438 F. Supp. 2d 203 (S.D.N.Y. 2006) (approving stipulation of settlement), was a system-wide class action challenging the pervasive practice of using excessive force against inmates incarcerated in New York City's jails. This litigation revealed significant numbers of credible excessive force complaints from prisoners who had been seriously injured by staff in the City jails. The settlement of this class action was intended to provide meaningful improvements in the training, practice, and supervision of agency staff and investigators, and changes in the Department's use of force policy.

---

85-2384 (AS) (E.D.N.Y.) [Brooklyn House of Detention]; *Reynolds v. Ward*, 81 Civ. 101 (PNL) (S.D.N.Y.) [Bellevue Prison Psychiatric Ward]; *Sheppard v. Phoenix*, 91 Civ. 4148 (RPP) (S.D.N.Y.) [Central Punitive Segregation Unit].

39.    Since 2002, senior supervisors and uniformed staff in the DOC have been sued repeatedly by inmates alleging staff beatings. Many of these cases, all resulting in favorable judgments for plaintiffs following settlement, include remarkably similar allegations of misconduct. See, e.g.,

• Reynolds v. City of New York, No. 11 Civ. 621 (S.D.N.Y.) (alleging beat-up in George Motchan Detention Center ("GMDC") resulting in shoulder fracture and loss of consciousness; settled for $200,500);

• Mull v. City of New York, No. 08 Civ. 8854 (S.D.N.Y.) (alleging beat-up in AMKC resulting in diffuse axonal injury to brain, partial loss of eyesight, and partial loss of hearing, and requiring the victim to take seizure medications; settled for $550,000);

• Belvett v. City of New York, No. 09 Civ. 8090 (S.D.N.Y.) (alleging beat-ups at GMDC and Robert N. Davoren Center ("RNDC") resulting in facial fracture;  settled for $350,000);

• Youngblood v. Baldwin, No. 08 Civ. 5982 (S.D.N.Y.) (alleging beat-up at GRVC resulting in skull laceration and broken nose; settled for $240,000);

• Williams v. City of New York, No. 07 Civ. 11055 (S.D.N.Y.) (alleging beat-up in Otis Bantum Correctional Center ("OBCC") resulting in fractured jaw and facial bones and torn earlobe; settled for $202,500);

• Williams v. City of New York, No. 09 Civ. 5734 (S.D.N.Y.) (alleging beat-up in RNDC resulting in laceration to head; settled for $87,500);

• Lee v. Perez, No. 09 Civ. 3134 (S.D.N.Y.) (alleging beat-up at North Infirmary Command ("NIC") resulting in multiple rib fractures, a spinal fracture and a collapsed lung; settled for $300,000);

• Shuford v. City of New York, No. 09 Civ. 945 (S.D.N.Y.) (alleging two beat-ups at RNDC resulting in facial fractures; settled for $375,000);

• Diaz v. City of New York, No. 08 Civ. 4391 (S.D.N.Y.) (alleging beat-ups involving two inmates, one at AMKC and one at OBCC; settled for $400,000 and $450,000, respectively);

• Lugo v. City of New York, No. 08 Civ. 2931 (S.D.N.Y.) (alleging beat-up at NIC resulting in orbital fracture; settled for $185,000);

14

• Cuadrado v. City of New York, No. 07 Civ. 1447 (S.D.N.Y.) (alleging beat-up at RNDC resulting in punctured lung; settled for $175,000);

• Scott v. City of New York, No. 07 Civ. 3691 (S.D.N.Y.) (alleging beat-up at GMDC resulting in orbital fracture; settled for $175,000);

• Pischeottola v. City of New York, No. 06 Civ. 2505 (S.D.N.Y.) (alleging beat-up at RNDC resulting in punctured lung requiring chest tube; settled for $150,000);

• Rice v. N.Y.C. D.O.C., No. 03 Civ. 582 (S.D.N.Y.) (alleging beat-ups of two inmates at GRVC resulting in collapsed lung and contusion hematomas in one case, and in neck and spinal cord injuries causing permanent stutter in the other; settled for $255,000 and $590,000, respectively);

• Joseph v. N.Y.C. D.O.C., No. 02 Civ. 9219 (S.D.N.Y.) (alleging beat-up at GRVC resulting in orbital fracture; settled for $375,000).

40.     Additionally, through DOC's elaborate reporting system, the Supervisory Defendants were aware of the pattern of a large number of

15

incidents involving the use of unnecessary and/or excessive force by DOC staff members resulting in serious injuries to inmates but failed to take sufficient steps to curb these abuses.

41.     As of the time plaintiff was beaten, the Supervisory Defendants were aware of the unwillingness of the Department to investigate adequately and impose meaningful discipline against DOC staff members who use unnecessary and excessive force on prisoners, or who fail to accurately and honestly report it.

42.     Through all these cases and Department reports, DOC and its supervisors have been made aware of the widespread practice by DOC staff members of using excessive and/or unnecessary force to injure, and not restrain, inmates. They have also been made aware of the failures of DOC's Investigation Division to adequately investigate allegations of misconduct and of the refusal of the Department to bring effective disciplinary charges against its officers to promote institutional reform and protect the safety of prisoners confined in DOC custody.

43.     The Department and the Supervisory Defendants cannot credibly contend that they are unaware of the pattern of abuse that occurs

with regularity in New York City jails and the failure of the Department to take sufficient measures to investigate and discipline this abuse.

44.    The Department has not taken sufficient steps to curb the abuse that occurs on a daily basis in New York City jails. Indeed, it allows that abuse to persist through inadequate investigations of allegations of misconduct and the failure to discipline officers in the face of obvious wrongdoing.

**Assault upon KEVIN SCHULER**

45.    Plaintiff is a 27 years-old African-American single male and an inmate with the New York City Department of Corrections.

46.    On or about July 4, 2014, Mr. Schuler was being held in a dorm at O.B.C.C. on Rikers Island.  At that time, other inmates referred to a female correction officer by the name of "Reid" (shield No. 06215) as a "pig" and a "bitch", and further mocked officer "Reid."  Plaintiff overheard the comments and innocently giggled.  The female officer became irate and approached plaintiff.  She demanded that plaintiff stop laughing at her. When plaintiff continued to giggle, the officer contacted a captain Barton (shield No. 1685) who removed plaintiff from the dorm and took plaintiff to

a hallway devoid of video cameras. Captain Barton demanded that plaintiff identify the inmates who were involved in ridiculing Officer Reid. Plaintiff could not. The captain became increasingly upset and pushed plaintiff against the wall.

47.     Plaintiff responded that he just got back from a family visit and did not know who initiated the jokes. The captain told plaintiff to shut up and slammed him against the wall. Immediately, another officer (white or Hispanic) came running and told plaintiff to "shut the fuck up nigger" and twisted plaintiff's hand all the way up plaintiff's back towards plaintiff's neck and cuffed plaintiff. Plaintiff screamed. At that time 3 other officers approached and began punching plaintiff. Plaintiff fell to the ground as a result of the assault.

48.     As plaintiff lay on the ground already cuffed, the officers attacked plaintiff, kicking, punching him. The officers picked plaintiff up as the captain called out to additional officers. Additional officers then approached in riot gear. One officer began to knee plaintiff in the stomach several times. The last time that officer kneed plaintiff, plaintiff felt as though he had "the wind knocked out of [him]". Plaintiff had difficulty breathing and felt as though he was fainting. Defendant officers

18

transferred plaintiff to other officers who continued to assault plaintiff. Plaintiff felt dizzy.   Defendants slammed plaintiff's head against a blunt surface Plaintiff could no longer stand up and fell to the floor, to his knees. Plaintiff was in excruciating pain.

49.     At that time, defendant officers pulled plaintiff's arms behind his back as plaintiff begged for mercy and for help.   Plaintiff complained that he couldn't breathe.   The officer told plaintiff to "shut the fuck up".   The officers then took plaintiff to the intake room.   When plaintiff got to the area, another inmate noticed that plaintiff's t-shirt was torn completely and was able to see what appeared to be "a broken bone sticking out."   That inmate then told plaintiff "yo, I think your rib is broken".   Plaintiff looked down and saw what could only be his broken rib protruding from his ribcage. Plaintiff asked an officer in intake to "please take [him] to the clinic".   That officer went to the clinic and returned to the intake dorm to inform plaintiff that "right now is not a good time because the COs who brought you in here are in the clinic speaking to the staff". Plaintiff waited in agony for well over an hour.

50.     The same CO later took plaintiff to clinic where a physician examined plaintiff and called for an ambulance.   The prison doctor told

plaintiff plaintiff's rib appeared to be broken.  The ambulance came and transported plaintiff to Elmhurst Hospital for treatment.  One of the defendant officers got into the ambulance with plaintiff.

51.     Once at Elmhurst Hospital, physicians conducted x-rays of plaintiff's ribcage and MRIs of plaintiff head and body.  The doctors confirmed upon x-ray that one of plaintiff's ribs was in fact broken. Plaintiff was given medication and discharged.

52.     A Defendant officer placed plaintiff in the back of a van and drove back to Rikers.  Once the van arrived at O.B.C.C., the officer parked the van, turned off the ignition, stepped out of the van, closed the door behind him and left plaintiff cuffed and shackled in the back of an increasingly sweltering van for over an hour.

53.     Plaintiff became increasingly dehydrated and began to panic.  Plaintiff cried out for help.  Plaintiff begged the officer to "please open the door".  The officer refused.  Plaintiff sweat profusely and felt as though he was "gonna pass out".    Finally, defendant officer opened the door and walked plaintiff back into the intake dorm.  Plaintiff was taken directly from intake to the clinic where he waited for a doctor to arrive.

20

54.     After seeing the doctor, plaintiff was placed in confinement without the benefit of a disciplinary hearing.   Thus far plaintiff has remained in "the box" without a disciplinary hearing and was denied phone access for several days.   For several days plaintiff was unable to contact his family or anyone on the outside about his ordeal.

55.     Without justification, plaintiff was assaulted and, consequently, sustained several bruises, sprains, and a broken rib, due to the severity of the beating he received.   The officers punched, kicked, and stomped upon plaintiff and kneed plaintiff in the stomach, and ribs. Plaintiff begged them to stop but they did not, causing multiple bruises, lacerations, a broken rib, among other injuries.   In the midst of assaulting plaintiff, the officers called plaintiff a "nigger".   Plaintiff described the resulting pain as "unbearable".

56.     Plaintiff requested medical attention and said medical attention was delayed as plaintiff suffered in pain.   Plaintiff was subsequently taken to Elmhurst Hospital where an x-ray revealed a broken rib.

**Extensive Time Spent in Solitary Confinement**

57.     During his incarceration on Rikers Island, plaintiff was subjected wrongfully to an extensive period of time in solitary confinement in addition to the instances of physical torture described above. Extensive solitary confinement and torture have had a deleterious effect on plaintiff's mental health. Plaintiff was beaten and isolated. Plaintiff has no prior history of psychiatric issues; however, plaintiff now suffers from deep depression and has had to deal with his issues without the benefit of mental health care and medication.

58.     At no time did plaintiff assault or attempt to assault any officer, nor did he present a threat or perceived threat to the personal safety of any officer or to the security of the jail so as to warrant the repeated application of blows. Plaintiff did not provoke his beating nor did he conduct himself in any manner that would warrant any use of force, much less the excessive force actually used. Defendant officers acted sadistically and maliciously and demonstrated deliberate indifference toward plaintiff's rights and physical well-being.

59.     All of the above was done in violation of state and federal law.

60.     Defendants employed unnecessary and unreasonable force against the plaintiff.     Defendant officers acted maliciously and intentionally, and said acts are examples of gross misconduct

61.     As a direct and proximate result of the malicious and outrageous conduct of defendants set forth above, Plaintiff suffered injuries including but not limited to emotional trauma, harm and distress, mental anguish, serious physical injuries including a broken rib, contusions about the face, head and body, severe bumps on his head, and bruising on his ribs, psychological injury and suffering, and more.

62.     Plaintiff continues to suffer from severe backaches due to the injuries he sustained as a result of the defendants' numerous assault upon plaintiff.

63.     The conduct of the defendant correctional officers in assaulting the plaintiff and denying him medical attention directly and proximately caused serious physical and emotional injury, pain and suffering, mental anguish, humiliation and embarrassment.

64.     The officers intentionally used excessive force. The defendant correctional officers acted with reckless and wonton disregard for the rights, health, and safety of the plaintiff

65.     As a direct result of the acts alleged herein, the plaintiff has suffered severe physical injury and pain, severe mental pain and anguish, and severe emotional distress.  He has suffered head injuries, permanent disfigurement, bruises to his head and ribs, among other injuries.  All of the events complained of above have left permanent emotional scars that the plaintiff will carry with him for the remainder of his life.

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983/Eight, Fourth and Fourteenth Amendments
### (Against All Individual Defendants)

66.     Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

67.     By reason of the foregoing, and by assaulting, battering, and using gratuitous, excessive, brutal, sadistic, and unconscionable force, failing to prevent other defendants from doing so, or failing to provide necessary medical care, or causing an unlawful seizure and extended solitary detention without due process, the Individual Defendants deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Eight, Fourth and Fourteenth

24

Amendments to the United States Constitution to be free from gratuitous and excessive force and unlawful seizure and detention.

68.     Defendants supervisors knew that the pattern of physical abuse described above existed in the City jails prior to and including the time of the assault on plaintiff. Their failure to take measures to curb this pattern of brutality constitutes acquiescence in the known unlawful behavior of their subordinates. The prevalence of these practices and general knowledge of their existence at the time of plaintiff's beatings, and the failure of these defendants to take remedial action and provide adequate medical care despite the fact that the misuse of force in City jails had been persistently brought to their attention, constitutes deliberate indifference to the rights and safety of the inmates in their care and custody, including plaintiff. These defendants' conduct has been a substantial factor in the continuation of such violence and a proximate cause of the constitutional violations alleged in this complaint

69.     As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

25

### SECOND CLAIM FOR RELIEF
### RESPONDEAT SUPERIOR LIABILITY
### (Against the City of New York)

70.     The plaintiff repeats and realleges each and every allegation above as if fully set forth in herein.

71.     The conduct of defendants officers occurred while they were on duty, and in and during the course and scope of their duties and functions as New York City correctional officers, and while they were acting as agents and employees and defendants City of New York and DOC, and as a result the defendants City of New York and DOC are liable to the plaintiff pursuant to the doctrine of respondeat superior.

72.     As a direct and proximate result of this misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

## <u>THIRD CLAIM FOR RELIEF</u>

### 42 U.S.C. § 1983/Fourteenth Amendment
### (Against Defendant City)

73.     Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

74.     Defendant City, through DOC, and acting under the pretense and color of law, permitted, tolerated and was deliberately indifferent to a pattern and practice of staff brutality and retaliation by DOC staff at the time of plaintiff's beatings. This widespread tolerance of correction officer abuse of prisoners constituted a municipal policy, practice, or custom and led to plaintiff's assault.

75.     By permitting, tolerating, and sanctioning a persistent and widespread policy, practice, and custom pursuant to which plaintiff was subjected to brutal beatings and untimely medical care, defendant City has deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed under the Fourteenth Amendment to be free from gratuitous and excessive force.

76.     As a direct and proximate result of the policy, practice, and custom detailed above, plaintiff sustained the damages hereinbefore alleged.

## FOURTH CLAIM FOR RELIEF
### EXCESSIVE USE OF FORCE
### 42 U.S.C. § 1983

77.     The plaintiff incorporates by reference the allegations set forth above as if fully set forth herein.

78.     The conduct and actions of defendants acting under color of law and under their authority as a New York City Correction Officers, in deliberately punching and kicking the plaintiff, was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification, and was designed to and did cause specific serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. § 1983, and the Eighth and Fourteenth Amendments to the United States Constitution.

79.     As a direct and proximate result of this misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

**FIFTH CLAIM FOR RELIEF**
**NEGLIGENCE**

80.     The plaintiff incorporates by reference the allegations set forth above as if full set forth herein.

81.     The defendants, jointly and severally, negligently caused severe physical injuries, denied medical treatment, and caused extreme emotional distress to the plaintiff. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights guaranteed him by the laws and Constitution of the State of New York.

82.     As a result of the foregoing, the plaintiff sustained permanent painful injuries, was made ill, was subjected to great pain, humiliation and emotional distress, and was otherwise damage and injured.

83.     As a direct and proximate result of this misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

## SIXTH CLAIM FOR RELIEF

### Monell

84.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this complaint with the same force and effect as if fully set forth at length herein.

85.     That the defendants, their agents, servants and employees negligently, carelessly and recklessly:

a) Failed to perform their duties as a reasonable prudent officer would have done under similar circumstances, including (but not limited to) using excessive brute force against inmates

b) Hired and retained incompetent and unfit officers whom they knew or should have known possessed aggressive properties and a lack of proper temperament.

c) Failed to exercise care instructing police officers as to their department, behavior, and conduct, including (but not limited to) failing to give proper instructions as to the use of force;

d) Failed to adequately train and supervise their employees in regard to the use of force and solitary confinement;

e) Failed to establish meaningful procedures for disciplining or re-training officers who have engaged in such misconduct including officers who have been the subject of police misconduct claims.

f) That upon information and belief, all the acts by the individual defendants were carried out with the full knowledge, consent and cooperation and under the supervisory authority of defendant City of New York.

71. That upon information and belief the defendant City of New York by its policy-making agents, servants and employees, authorized acts; and/or failed, allowed or encouraged those acts to continue.

72. That the conduct of the individual defendants was consistent with long-standing customs, practice, and usages of officers employed by defendant City of New York.

73. Upon information and belief, despite knowledge of such illegal de facto policies and practices, the supervising and policy making officers and officials of the DOC and the City of New York have not taken adequate steps to terminate these policies and practices, have not disciplined individuals who engage in such practices or otherwise trained police officers with regard to the constitutional and statutory limits on the

exercise of their authority, and have instead sanctioned and ratified these policies, customs and practices through their deliberate indifference to or negligent disregard of the effect of said policies, customs practices upon the constitutional rights of persons in the City of New York.

### SEVENTH CLAIM FOR RELIEF
**Assault and Battery**
**(Against All Defendants)**

74.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

75.     In assaulting, battering, and threatening plaintiff, or standing by and failing to intervene when plaintiff was assaulted, the Individual Defendants, acting in their capacities as DOC officers, and within the scope of their employment, each committed a willful, unlawful, unwarranted, and intentional assault and battery upon plaintiff.

76.     The assault and battery by these defendants was unnecessary and unwarranted in the performance of their duties as DOC officers and constituted an unreasonable and excessive use of force.

77.     Defendants, their officers, agents, servants, and employees were responsible for plaintiff's assault and battery and the subsequent failure to provide adequate medical care. Defendant City, as employer of each of the defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

78.     As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

### EIGHTH CLAIM FOR RELIEF
**Negligent hiring/training/retention of Employment Services
(Against Defendant City)**

79.     Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

80.     Defendant City, through the DOC, owed a duty of care to plaintiff to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that injury to plaintiff or to those in a like situation would probably result from the foregoing conduct.

81.     Upon information and belief, all of the Individual Defendants were unfit and incompetent for their positions.

82.     Upon information and belief, defendant City knew or should have known through the exercise of reasonable diligence that the Individual Defendants were potentially dangerous.

83.     Upon information and belief, defendant City's negligence in screening, hiring, training, disciplining, and retaining these defendants proximately caused each of plaintiff's injuries.

84.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## <u>REQUEST FOR RELIEF</u>

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988;

and

Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial.

DATED:      November 25, 2015
            Brooklyn, New York

_____
Amy Rameau, Esq.
The Rameau Law Firm
16 Court Street, Suite 2504
Brooklyn, NY 11241
(718) 852-4759
rameaulawny@gmail.com

*Attorney for plaintiff*

35